UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARENDA CARR, | ) |
| | ) |
| Plaintiff, | ) No.: 17 CV 7297 |
| | ) |
| vs. | ) Judge: |
| | ) Magistrate Judge: |
| CITY OF CHICAGO, MARCUS MYLES, | ) |
| JAMES PADAR, CHERRON BADY, | ) |
| GEROLD LEE, ANTHONY ROTKVICH, | ) Jury Demand |
| WOJCIECH LACZ, DIEGO DAVILA, | ) |
| KEVIN SELLERS, JOSE RAMIEREZ, | ) |
| RICHARD WOOTEN, DONALD MARHAM, | ) |
| PETER ARPAIA, | ) |
| JOHN DOES / JANE ROES 1-10, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

## Parties

4. Plaintiff Darenda Carr is a resident of Chicago, Illinois.

5. Defendant Chicago Police Officers MARCUS MYLES (Star 14020), JAMES PADAR (Star 1210), CHERRON BADY (Star 11453), GEROLD LEE (Star 15949), ANTHONY ROTKVICH (Star 17755), WOJCIECH LACZ (Star 15609), DIEGO DAVILA (Star 11842), KEVIN SELLERS (Star 13523), JOSE RAMIEREZ (Star 195), RICHARD

1

WOOTEN (Star 18383), PETER ARPAIA (Star 1510), and DONALD MARHAM (Star 1100), ("Defendant-Officers") are duly appointed and sworn Chicago police officers. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

6. The Defendant-Officers are sued in their individual capacities.

7. John Does / Jane Roes 1-10 are Chicago police officers whose identities are currently unknown, but who at all times relevant to this complaint were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation. Upon learning their true identities in discovery, Plaintiff will seek leave of court to amend the complaint and add them as defendants.

8. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

## Facts

9. In early 2011 Chicago Police Department Squad A-5, along with the 008th district tactical and patrol units, began operation *Meals on Wheels.*

10. Operation *Meals on Wheels* was an undercover police effort to expose drug sale activity that was allegedly controlled by Terrell Mason in the area of 6300 South Western in Chicago, Illinois.

11. During the initial phase of Operation *Meals on Wheels*, an unknown civilian provided the police with a telephone number they could use to arrange delivery of heroin.

12. The telephone number belonged to a man named Jerry Smith.

13. Officers called the number and began to set up undercover drug buys.

14. Over a period of many months officers claim to have engaged in over 20 undercover drug buys with the aid of one or more cooperating civilians.

15. In October 2011, officers arrested and charged around 25 individuals who they alleged were connected to these drug buys.

16. Defendant-Officers knowingly, intentionally, and falsely implicated Plaintiff Darenda Carr as being part of this drug sale operation.

17. Specifically, Defendant-Officers falsely alleged that on February 4, 2011, February 8, 2011, and February 24, 201l, Plaintiff Darenda Carr and Jerry Smith sold heroin to an undercover Chicago police officer.

18. Darenda Carr was not selling drugs with Jerry Smith on February 4, 2011, February 8, 2011, or February 24, 2011, nor any other day.

19. Darenda Carr is a 32-year-old mother of three from Chicago. She has been a full-time commercial property manager for nine years. She manages hundreds of properties and tenants and supervises a team of employees. She is weeks away from graduating college with a degree in Business. She hopes to open her own commercial property management business.

20. Darenda Carr has no connection to the alleged *Meals on Wheels* drug operation (or to any drug sale activity), except for being related to some of the individuals allegedly involved.

21. She has an alibi during the dates and times Defendant-Officers claim she was supposedly selling drugs with Jerry Smith.

22. Defendant-Officers have no evidence of her involvement in this drug activity, other than their own false and manufactured statements and reports.

23. Jerry Smith admitted his own involvement in this drug activity, but has always denied that Darenda played any role in selling drugs with him.

24. Defendant-Officers falsely implicated Darenda Carr in this operation in order to protect and avoid revealing the criminal activity and identity of civilian informants.

*February 4, 2011, Transaction*

25. On February 4, 2011, at 11:50am, according to police reports, Officer Myles and a civilian working with Myles called number (773) 879-3800 and spoke with Jerry Smith to arrange a heroin purchase.

26. Smith and Myles agreed to meet at 6515 South Western in Chicago so that Smith could sell Officer Myles 0.4 grams of heroin.

27. Defendant-Officers falsely claimed in reports that Darenda Carr and Jerry Smith arrived in an SUV together, and that Darenda helped facilitate the drug transaction by asking Myles how many bags of heroin he wanted and then took his payment.

3

28. Darenda never sold drugs with Jerry Smith nor was she with Jerry Smith on February 4, 2011.

29. Jerry Smith was selling drugs on February 4, 2011, with Natasha Reed, his girlfriend.

30. Natasha Reed is believed to have been working with police officers as an informant.

31. Natasha Reed was not charged related to her illegal drug sale activity in this case.

32. Officer Myles and other Defendant-Officers falsely implicated Darenda Carr in this drug transaction and/or wrote false reports about Darenda's involvement. Officer Myles falsely identified Darenda Carr in a photo array as the person who sold narcotics with Jerry Smith.

33. This false evidence was used to bring false felony charges against Darenda.

***February 8, 2011, Transaction***

34. On February 8, 2011, Officer Myles called Jerry's mobile number to arrange another transaction.

35. According to police reports, Jerry told Myles to meet him at 67th Street and South Ashland in an alley. After Myles arrived, police reported that Darenda, wearing a multi-colored head scarf, white shirt, and white pajama pants came from the back porch of a home to meet Officer Myles in the alley.

36. Police reported that Darenda then sold Officer Myles six bags of heroin weighing 0.6 grams.

37. Darenda Carr did not sell Officer Myles drugs on February 8, 2011.

38. Natasha Reed, Jerry Smith's girlfriend, the person who lived in that house with Jerry Smith, was the person who met Officer Myles in the alley to sell him heroin, on this occasion as well.

39. Defendant-Officers again falsely reported that Darenda Carr participated in the sale of narcotics by falsely accusing her in this second transaction.

40. Defendant-Officers also falsely reported that Darenda Carr lived with Jerry, when in fact Natasha Reed lived with Jerry.

4

41. Defendant-Officers knew that Smith's partner was not Darenda Carr, but Natasha Reed. They implicated Darenda Carr anyway.

*February 24, 2011, Transaction*

42. On February 24, 2011, as in the prior two instances, police again called Jerry Smith's mobile number to arrange a heroin buy.

43. This time, Officer Myles met Smith at 60th Street and Campbell to buy 0.4 grams of heroin.

44. Police reports state that Smith and Carr arrived together in a minivan and sold Officer Myles heroin.

45. For this occurrence, like the others, Smith was with Natahsa Reed, and not Darenda Carr.

46. It is believed that Natasha Reed was working with the police as an informant or cooperator, and that Defendant-Officers falsely accused Darenda Carr to protect or conceal Reed's identity as an informant.

47. It is believed that Natasha Reed was involved in significant narcotics sales and was not prosecuted for that criminal activity in exchange for cooperating with the police in the *Meals on Wheels* case.

*Darenda's Arrest*

48. On October 28, 2011, Darenda learned that police were looking for her related to some undisclosed criminal activity.

49. Darenda turned herself into the police station to straighten out what she assumed was a misunderstanding.

50. Darenda was charged with multiple counts of delivery of a controlled substance.

51. Darenda was given a $45,000 D-bond and was taken to the Cook County Jail.

52. At the time of her arrest, Darenda was 7 months pregnant and was the primary caretaker of her young daughter.

53. Darenda suffered while in the County Jail from October 28, 2011, to November 5, 2011. She was pregnant, scared, and separated from her young daughter.

54. During that time, Darenda also missed work and school.

55. On November 5, 2011, Darenda's bond was reduced to a $25,000-D bond. Darenda used her entire savings to post the bond amount needed to be released from custody.

56. On November 16, 2011, Defendant-Officer Kevin Sellers falsely testified before a grand jury that Darenda Carr and Jerry Smith delivered heroin to an undercover police officer on multiple occasions.

57. Darenda was indicted on multiple counts of Delivery of a Controlled Substance. These Class X charges were each punishable by 6 to 30 years in the penitentiary.

58. Defendants continued the prosecution of Darenda's case in the Cook County Criminal Court system for nearly 5 years.

59. During this time, Defendant-Officers knew they did not have probable cause to arrest or prosecute Darenda; however, they took steps to commence and continue her prosecution.

60. For those 5 years, Darenda was detained. First, she was detained while she was in the Cook County Jail. Then, she was detained while on bond and facing felony charges. During this time her freedom of movement was restricted; she was confined to a geographic area; she had conditions of bond that she was required to comply with or face arrest; her appearance was compelled at court dates; and she was under the control of the Cook County court system.

61. On October 18, 2016, the State dropped all charges against Darenda Carr for her alleged involvement in Operation *Meals on Wheels*.

62. Each individual Defendant-Officer personally participated in the unlawful conduct, and acted jointly and in concert with the other Defendants who participated or acquiesced in the unlawful conduct, or failed to intervene to stop the unlawful conduct.

63. As a direct and proximate result of the acts of the Defendants described above, Plaintiff suffered damages including physical pain and suffering, emotional distress, loss of freedom, lost wages, loss of time with her daughter, and pecuniary damages.

## COUNT I
### (42 U.S.C. § 1983 Fourth Amendment Claim for Unlawful Detention)

64. Plaintiff re-alleges paragraphs 1 through 63 as if fully set forth herein.

65. Defendant-Officers, knowing that probable cause did not exist, acted individually, jointly, and/or in conspiracy, to cause Plaintiff to be arrested, detained and prosecuted for delivery of a controlled substance, or failed to intervene knowing that Plaintiff was being

detained without probable cause, thereby violating Plaintiff's right to be free from unreasonable seizures guaranteed to her by the Fourth and Fourteenth Amendments of the United States Constitution.

66. Plaintiff was detained during the time she was in custody in Cook County Jail and also during the five years she was on bond and facing felony charges. During this time, Darenda's freedom of movement was restricted, she had conditions of bond that she was required to comply with or face arrest, her appearance was compelled at court dates, and she was under the control of the Cook County court system.

WHEREFORE, Plaintiff asks that this Honorable Court:
 a) Enter judgment against Defendant-Officers,
 b) Award Plaintiff compensatory and punitive damages,
 c) Award attorneys' fees and costs, and
 d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – Civil Conspiracy)

67. Plaintiff re-alleges paragraphs 1 through 63 as if fully set forth herein.

68. Defendant-Officers acted in concert pursuant to an agreement to deprive Plaintiff of her constitutional right to be free from unreasonable seizure, prosecution, and detention without probable cause.

69. Defendant-Officers knowingly and intentionally schemed and worked together in a common plan to falsely arrest and charge Plaintiff, to write false reports, to testify falsely before the grand jury, and to commence and continue the prosecution of the Plaintiff.

70. As described above, Plaintiff suffered harm and injury as a result of the Defendants' conspiracy to deprive her of her constitutional rights.

WHEREFORE, Plaintiff asks that this Honorable Court:

 a) Enter judgment against the individual Defendants,
 b) Award Plaintiff compensatory and punitive damages, as determined at trial,
 c) Award Plaintiff attorney's fees and costs, and
 d) Award such other relief that this Honorable Court deems just and equitable.

## COUNT III
### (State Law Claim for Malicious Prosecution)

71. Plaintiff re-alleges paragraphs 1 through 63 as if fully set forth herein.

72. Defendant-Officers commenced and/or continued false charges and/or prosecution against Plaintiff for delivery of a controlled substance.

73. Defendant-Officers did so with malice.

74. There was no probable cause for such charges.

75. The charges were terminated in a manner favorable to Plaintiff.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT IV
### (State Law Claim for Intentional Infliction of Emotional Distress)

76. Plaintiff re-alleges paragraphs 1 through 63 as if fully set forth herein.

77. Defendant-Officers acted intentionally or recklessly, individually, jointly, and in conspiracy, charged Plaintiff or caused Plaintiff to be charged with false Class X felony charges by swearing to false versions of events and prosecuting Plaintiff for crimes she did not commit.

78. Defendant-Officers' conduct was extreme and outrageous.

79. As a direct and proximate result of Defendant-Officers' outrageous conduct, Plaintiff was put in jail while pregnant and has experienced, and continues to experience, severe emotional distress, including fear of the police, sleep disruption, and anxiety.

80. Defendant-Officers' outrageous conduct was ongoing during the course of the entire criminal prosecution.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers,

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT V
### (Claim for Indemnification pursuant to 745 ILCS 10/9-102)

81. The acts of the Defendant-Officers and John Doe/Jane Roe officers described above were willful and wanton, and committed in the scope of employment.

82. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant City of Chicago is liable for any judgments in this case arising from the Defendant-Officers' and the unnamed CPD officers' actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant City of Chicago to indemnify the Defendant-Officers and the unnamed CPD officers for any judgment entered in this case arising from their actions.

## COUNT VI
### (State law claim for *Respondeat Superior*)

83. The acts of the Defendant-Officers and John Doe/Jane Roe officers, as described above, were committed in the scope of employment.

84. As principal and employer, Defendant City of Chicago is liable for its agents' actions under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff asks that this Honorable Court find Defendant City of Chicago liable for the actions of Defendant-Officers and John Doe/Jane Roe officers for any judgment entered in this case arising from their actions.

**Plaintiff demands a trial by jury on all claims.**

Respectfully submitted,

/s/ Sara Garber
*Counsel for Plaintiff*

Sara A. Garber
Tony Thedford
Thedford Garber Law
53 West Jackson Blvd., Suite 638
Chicago, Illinois 60604
O: 312-614-0866
E: sara@thedfordgarberlaw.com
F: 312-754-8096